Honorable John T. Montford Chairman State Affairs Committee Texas State Senate P.O. Box 12068 Austin, Texas 78711
Re: Whether mass transit taxes collected under article 1118z, V.T.C.S., may be used by a municipality to maintain its streets (RQ-1535)
Dear Senator Montford:
You ask whether taxes dedicated to mass transit and collected pursuant to article 1118z, V.T.C.S., may be used by a municipality to maintain its public streets. We conclude that such taxes may not be used for that purpose.
Article 1118z permits certain incorporated cities and towns to establish a mass transit department. Id. § 2(a). If a local sales and use tax dedicated to providing a method of funding a mass transit system is approved by the voters, then the city transit department may build or acquire and operate such a system. Id. § 3, 4, 5, 7. Taxes collected pursuant to article 1118z "may be used only for mass transit purposes." Id. § 8(f).
The statute defines a mass transit "System" to mean
 all real and personal property owned or held by an incorporated city or town and operated . . . for mass transit purposes, including land, easements, rights-of-way, other interests in land, franchises, rail and bus lines, stations, platforms, terminals, garages, shops, control houses, other buildings and structures, rolling stock, signals, other equipment, supplies, and other facilities necessary or convenient for the use of or access to mass transit by persons or vehicles or for the protection or environmental enhancement of mass transit.
V.T.C.S. art. 1118z, § 1(6). "Mass transit" is
 the transportation of passengers and their hand-carried packages or baggage by means of surface, overhead, or underground transportation except aircraft or taxicab.
Id. § 1(5).
The relevant powers of a municipal transit department operating a mass transit system include the power to:
 acquire, construct, own, operate, and maintain a system within a city or town. A department may use the streets, alleys, roads, highways, and other public ways within the city or town. In the construction, reconstruction, repair, maintenance, or operation of a system, a department may relocate, raise, reroute, change the grade of, or otherwise alter the construction of any:
(1) street, alley, highway, road, or railroad. . . .
V.T.C.S. art. 1118z, § 6(c).
Thus, nothing in the statute permits a municipality which has adopted a local sales and use tax to fund a municipal transit department to use those tax funds for the general maintenance of its public streets. Additionally, the statute unequivocally states that a transit department "may use the streets, alleys, roads, highways, and other public ways within the city or town." V.T.C.S. art. 1118z, § 6(c).
In our opinion, a transit system's right to "use" city streets necessarily includes the right to subject such streets to normal wear and tear such as must have been contemplated by the legislature when it adopted article 1118z with this provision. Nowhere does the statute tie the ordinary use of a public street to the payment of a fee by the transit department from tax funds raised solely for the purpose of funding the department's operation of a mass transit system.
Although the statute contemplates that the construction and operation of a mass transit system may require the department to undertake construction projects affecting city streets, it limits the department's powers to only those circumstances requiring the relocation, raising, rerouting, alteration, or changing of the streets used by the mass transit system. V.T.C.S. art. 1118z, s 6(c). The ordinary maintenance of a city street over which the vehicles of a mass transit system may pass is thus not with the enumerated powers of the transit department upon which tax funds may be spent.
 SUMMARY
Taxes raised to pay for the acquisition and operation of mass transit system under the aegis of the mass transit department of a city or town, article 1118z, V.T.C.S., may not be used to pay for the maintenance of city streets.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by D.R. Bustion, II Assistant Attorney General